**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**OVERTON DIXON,**
        **Petitioner,**

**v.**                                                         **Case No. 3:04cv164/MCR/MD**

**JAMES R. MCDONOUGH,**
        **Respondent.**

_____

**REPORT AND RECOMMENDATION**

        Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 4).  Respondent has filed a response (doc. 10) to which petitioner has replied (doc. 14).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

**BACKGROUND AND PROCEDURAL HISTORY[1]**

        On May 21, 1999, at approximately 4:00 a.m., a person was observed by Pensacola, Florida police officers attempting to steal a gas powered generator from a fenced garage compound owned by the City.  The suspect ran into a nearby

---

**[1]**The facts stated herein are those presented at trial (doc. 11, ex. B) and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  Martin v. State of Alabama, 730 F.2d 721,724 (11th Cir. 1984).

wooded area.  The police found petitioner in the woods, lying on the ground and breathing heavily, shortly thereafter.  A subsequent examination of vehicles in the city compound disclosed that someone had broken windows in a van and in a step van.  Missing from the latter vehicle was the generator the suspect was trying to steal.  A city maintenance employee testified that the step van was a vehicle he used in his work for the city, and that he parked it in the city compound at night.

Petitioner was charged with two counts of burglary of an unoccupied conveyance, one count of grand theft, one count of resisting an officer without violence, and two counts of criminal mischief(doc. 11, ex. A, pp. 1-2).[2]  His case was tried to a jury, and he was found guilty on all counts except for one of the burglaries, for which he was found guilty of the lesser included offense of attempted burglary (*id.*, pp. 5-6).  He was sentenced on the felony counts to concurrent ten-year terms of imprisonment as an habitual offender (*id.*, pp. 24-29).  He was sentenced on the misdemeanor counts to time served.  His direct appeal was unsuccessful. Petitioner then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 in which he raised the same three grounds he raises here.  The Rule 3.850 court held an evidentiary hearing at which petitioner was represented by counsel.  The court denied relief in a written order (ex. H, p. 102), and petitioner's appeal of the denial order was unsuccessful.  He now brings this federal habeas petition.  Respondent concedes that the petition is timely, and that the claims raised were properly exhausted by being presented to the state courts (doc. 10, p. 2).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state

---

[2]Hereafter, all references to exhibits will be to those attached to Doc. 11, unless otherwise noted.

court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S.

649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11ᵗʰ Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11ᵗʰ Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the

petitioner's claims.  *Neelley,* 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see also Crawford v. Head,* 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

All three of petitioner's grounds for relief rely on alleged ineffective assistance of counsel.  The first ground also contains what appears to be a due process claim, as will be more fully discussed below.  In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc). Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may

dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

1. Denial of due process caused by counsel's failure to move for judgment of acquittal.

Petitioner first contends that his due process rights were violated when the state failed to prove an essential element of the crimes - the ownership of the vehicles - and that his attorney failed to move for a judgment of acquittal (JOA) on that basis.  The Rule 3.850 court, which presided at trial, disagreed, holding that "the State did not fail to establish ownership of the conveyances."  (Ex. H, p. 102).

To the extent that this ground can be construed as a due process claim based on failure to prove all essential elements of the crime, petitioner's claim lacks merit. This court's analysis of the question is instructed by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  There, a habeas petitioner claimed that he was entitled to federal habeas relief because the state failed to prove all the elements of the crime.  The Court held that "the critical inquiry on review of sufficiency of the evidence to support a criminal conviction [must be] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  443 U.S. at 318, 99 S.Ct. at 2788.  The specific question in the inquiry "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*., 99 S.Ct. at 2789 (emphasis in original).

Here the state presented the following evidence on ownership of the vehicles: the vehicles were parked in the city garage (ex. B, p. 16); an officer had to get keys to the lock on the gate so law enforcement could enter the compound (ex. B, p. 42); the "garage" is actually a large fenced-in compound with several buildings and a lot

where the vehicles are parked (*id.*); when petitioner realized he had been spotted, he jumped the fence and fled (ex. B, p. 37); inside the compound the police found a city Leisure Services truck with a side window broken out (ex. B, p. 47); the generator came from the Leisure Services truck (*id.*); there was also a van in the lot with a broken window, and from which tools were missing (ex. B, p. 48); a supervisor at the city garage saw the two damaged vehicles and estimated the cost of repairing them (ex. B, p. 99-101); a city maintenance employee was assigned to Truck 555, which he was required to leave parked in the locked city lot at night, and the morning after petitioner's arrest he found that Truck 555 had a broken window, and some tools and a generator were missing (ex. B, p. 103-104).  Petitioner contends that the city was required to produce title certificates or some similar official document in order to prove ownership of the vehicles.  While that would certainly have been sufficient proof of ownership, it is clear that a rational trier of fact could have found that the city owned the vehicles beyond a reasonable doubt, based on the foregoing evidence considered in the light most favorable to the prosecution.

Moreover, the statute under which petitioner was charged makes it a criminal offense to enter a conveyance with the intent to commit an offense therein "unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."  Fla. Stat. § 810.02(1)(a).  A rational finder of fact could conclude, beyond a reasonable doubt, that (1) regardless of who owned the vehicles, they were not open to the public given the locked fence, and (2) the petitioner was not licensed to enter or remain in them given the facts that the vehicles had been broken into and that petitioner fled from the scene when the police arrived.  Petitioner therefore cannot show that there was a due process violation.

To the extent that petitioner bases his claim on ineffective assistance of counsel, which he clearly does, he is not entitled to federal habeas relief. Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining that counsel's performance was deficient, but

since the ownership issue under a state statute involved a question of state law, this court would first have to conclude that the state court misinterpreted state law.

In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.  *Id.* at 1354-55.  The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.  *Id.*  The Eleventh Circuit held:  "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn,* 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992)*, Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and  *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.  The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.  The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* -- the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*. Even if [petitioner's counsel] was ineffective for failing to make the

**objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.**

427 F.3d at 932.

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel moved for JOA based on the state's failure to prove ownership of the vehicles. The motion would have been denied because the state "did not fail to prove ownership of the conveyances." (Ex. H, p. 102). Therefore, counsel cannot be faulted for having failed to make the motion. And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

Thus, whether this claim is cast as one based on denial of due process because of insufficient evidence, or as a claim of ineffective assistance of counsel, petitioner is not entitled to federal habeas relief, and the writ should not issue.

> 2. **Ineffective assistance of counsel - incorrect advice on defense of involuntary intoxication.**

Next petitioner contends that his attorney gave him incorrect advice on the defense of involuntary intoxication. He says that he could have proven, by his own testimony and the testimony of other willing and available witnesses, that on the night in question he had consumed large amounts of alcohol and drugs, but that his attorney incorrectly told him that involuntary intoxication was not a defense to burglary. The Rule 3.850 court heard evidence on this question, and found that the decision not to use involuntary intoxication as a defense was a reasoned trial strategy, and that counsel was not ineffective (ex. H, p. 102). Petitioner says that this entirely missed the point. He contends not that counsel chose a particular strategy, but that he gave petitioner incorrect legal advice. Since his lawyer told him that voluntary intoxication was not an available defense, he did not insist on his counsel using it.

At the Rule 3.850 hearing, counsel testified that the defense theory was misidentification. Petitioner insisted to counsel that he did not have anything to do with a burglary, and that the police had arrested the wrong man (ex. H, p. 76). When

*Case No: 3:04cv164/MCR/MD*

petitioner also mentioned his alleged intoxication, counsel explained that a misidentification defense is inconsistent with a voluntary intoxication defense - that you cannot reasonably tell a jury that you didn't do it, but that if you did do it, you were drunk when you did it (ex. H, pp. 68-69, 71).  The Rule 3.850 court found this testimony to be credible.  This court gives deference to the factual findings of the state court.  Based on counsel's testimony, it was not objectively unreasonable to conclude that petitioner failed to establish ineffective assistance, because even if counsel was incorrect in advising petitioner that the defense was not legally available, it still was not available to petitioner as a practical matter since petitioner insisted that he did not commit the crimes and that the police had arrested the wrong man.

The Eleventh Circuit has considered a very similar argument in the habeas context.  In *Harich v. Dugger*, 844 F.2d 1464, 1469-71 (11th Cir. 1988) the court held that where a defendant maintains his innocence, it is not ineffective assistance of counsel not to pursue a voluntary intoxication defense, even where counsel mistakenly thinks it is not legally available as a defense.  The *Harich* court noted that it is not reasonably probable that a jury would find that a defendant lied about his innocence while he told the truth about his intoxication.  That is precisely the situation here.

Moreover, petitioner has not shown there is a reasonable probability that his alternative defense would have produced a different result.  Petitioner is correct that at the time of these offenses voluntary intoxication was a defense to burglary. *Reese v. State*, 869 So.2d 1225 (Fla. 2nd DCA 2004).  However, the defense requires more than just intoxication - it requires an admission.  Here petitioner falls short.  Nowhere does he say that if he had known that a voluntary intoxication defense was available, he would in fact have admitted (or at least not contested) that he committed the crimes but was intoxicated when he did it.  He says that there were witnesses who could have confirmed his drinking and smoking crack cocaine, and that counsel failed to investigate, but he has failed, even now, to confess to the crimes.  Petitioner has therefore failed to show prejudice.  The state court's ruling

did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

3.  <u>Ineffective assistance of counsel - introducing damaging testimony.</u>

Finally, petitioner faults his attorney for eliciting testimony from police officers that the area where the burglary took place is near the Grand Hotel, apparently a known location for dealing drugs and other criminal activity.  Counsel asked testifying officers to agree on cross-examination (with the same questions asked of several officers) that: the Grand Hotel is a high drug area; there are black males hanging around the Grand Hotel 24 hours a day, seven days a week; and, because it is a high drug area there is a lot of crime and there are a lot of people continuously in the area.  Petitioner says that this was prejudicial, because the evidence showed that the city compound is very near the Grand Hotel, and that counsel inexplicably associated him with a high crime, drug infested area.

The Rule 3.850 court heard evidence on this issue and found that the decision to elicit this testimony was part of counsel's trial strategy (ex. H, p. 103).  The testimony at the hearing supports this finding.  Counsel testified that his theory of defense was misidentification, and that since the petitioner was found in an area between the city compound and the Grand Hotel (there is only a small wooded area between them), it was a viable defense to argue to the jury that there were plenty of other people in the area who met the suspect's general description and who may have committed the burglaries (ex, H, p. 72).  Counsel noted that the police found petitioner lying down in some woods, where he had the right to be, but that they did not apprehend him either actively committing a crime or actively running away.  Counsel confirmed at the hearing that it was a tactical decision to put other criminals in the immediate area of the city compound, and that he would do the same again (*id.*).

This court will defer to the state court's factual finding that the questions asked of the officers were part of counsel's trial strategy, because such a finding

was not "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell, supra*. Moreover, this court cannot say that the Rule 3.850 court's conclusion that this strategy was a reasonable one, was itself objectively unreasonable. Nor can petitioner show that he was prejudiced, because he has not shown a reasonable probability that a different approach on counsel's part would have changed the outcome. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. § 2254 amended petition for writ of habeas corpus (doc. 4), challenging the conviction and sentence in *State of Florida v. Overton Dixon* in the Circuit Court of Escambia County, Florida, case no. 99-1868, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 26th day of July, 2006.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).